UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

          v.

FRANK CABRERA,

                    Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CR-294 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On February 7, 2022, Frank Cabrera ("Defendant") pled guilty pursuant to a plea agreement to Count One of an Indictment charging him with three counts of Distribution of Child Pornography and one count of Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and 2252(a)(4)(B) and 2252(b)(2), respectively. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to ninety (90) months of incarceration, five (5) years of supervised release with special conditions imposed, restitution in the amount of $59,000.00, forfeiture as set forth in the plea agreement and Forfeiture Order, and payment of a $100.00 special assessment.

# DISCUSSION

## I.   Background

The Department of Homeland Security-Homeland Security Investigations ("DHS-HSI") led the investigation into the instant offense through an instant messenger application for mobile devices provided by Kik Interactive, Inc. ("Kik"). Presentence Investigation Report ("PSR"), ECF No. 57 ¶ 8. DHS-HIS's investigation into Defendant began in November 2018 after an undercover DHS-HSI agent observed Kik users distributing sexually explicit material, including images and videos of prepubescent female minors. *Id.* ¶ 8. Agents observed and tracked Defendant on the Kik platform under the username "electrostar 2000" as he shared multiple images and video files depicting prepubescent female minors exposing their genitals and breasts and engaging in various forms of sexual activity with adult men, objects, and other minors. *Id.* ¶ 9.

1

On March 21, 2019, the Honorable Magistrate Judge Vera M. Scanlon issued a search warrant to search Defendant's home for evidence of child pornography. *Id.* ¶ 10. On April 3, 2019, DHS-HSI agents executed the search warrant and, in the course of their search, recovered 18 electronic devices, including an array of electronic tablets, laptops, external hard drives, and cellular phones. *Id.* The agents later uncovered Defendant's devices contained more than 2,000 images and videos depicting child pornography. *Id.* One such video depicted a nude adult male anally penetrating a nude toddler boy who is sitting on top of the adult male. *Id.* ¶ 11. Another depicted a nude prepubescent girl approximately 9 to 11 years old, whose arms are confined by restraints behind her back while she is lying face down and while an adult male anally penetrates her with an object. *Id.* Yet another video shows an adult female orally penetrating a nude toddler girl, and another still shows nude prepubescent girls confined by restraints being vaginally penetrated by nude adult males. *Id.*

The DHS-HSI investigation into Defendant culminated on June 26, 2019, when a United States grand jury returned a four-count Indictment charging him with three counts of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). ECF No. 12. On February 7, 2022, Defendant pled guilty pursuant to a plea agreement to Count One of the Indictment, which charges him with Distribution of Child Pornography. Plea Agreement, ECF No. 50.

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II.   Legal Standard

18 U.S.C. § 3553 sets forth the legal standards and outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision, which this Court now does.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005). *See also United States v. Kimbrough*, 552 U.S. 85 (2007). Nevertheless, the Guidelines range provides the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

3

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It addresses each in turn.

## III. Analysis

### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

#### 1. **Family and Personal Background**

Defendant was born on July 23, 1980 to the marital union of Jose and Dolly Cabrera. PSR ¶ 43. Defendant's parents divorced in 1998. *Id.* ¶ 46. Both of Defendant's parents currently reside in Florida. *Id.* Defendant's parents are aware of Defendant's instant arrest and have remained supportive of him. *Id.* Defendant's brother, Joe Cabrera, also lives in Florida with his wife and children. *Id.* ¶ 45. He too is aware of Defendant's instant arrest and has remained supportive of him. *Id.*

Defendant spent the first part of his childhood in Bronx, New York in a middle-income household. *Id.* ¶ 46. In 1990, Defendant's father retired and the family moved to Parkland, Florida. *Id.* Defendant described his childhood as "normal" and free of any abuse. *Id.* After Defendant's parents divorced, Defendant lived with his mother until the age of 21, when he moved to Orlando, Florida. *Id.* In 2010, Defendant moved to Brooklyn, New York in pursuit of a job opportunity and has lived in Brooklyn ever since. *Id.* Defendant is presently single and has no children. *Id.* ¶ 47.

### 2. Educational and Employment History

Defendant graduated from Marjory Stoneman Douglas High School in 1998 in Parkland, Florida. *Id.* ¶ 59. He received his associate degree from Full Sail University in Winter Park, Florida, in 2002. *Id.*

From 2001 until 2008, Defendant supported himself with freelance jobs and by working for House of Blues and Hardrock Café in Orlando, Florida. *Id.* ¶ 63. Between 2008 and 2017, Defendant was employed by an audio and visual company—first in Florida and then in New York. *Id.* ¶ 62. Defendant left this job in 2017 because the company was relocating to New Jersey, and he did not wish to move. *Id.* Defendant worked as a Quality Control Specialist for AV Workshop in New York between October 2018 and June 2019. *Id.* ¶ 61. Defendant reported he was terminated from this position due to the instant offense. *Id.* Defendant's position at the company requires him to use a computer, which is something he has not been permitted to do following his arrest. *Id.* Consequently, Defendant has been unemployed since 2019. *Id.* ¶ 60.

### 3. Prior Convictions

Defendant has no prior convictions. *Id.* ¶¶ 35-41.

### 4. Medical and Mental Health

Defendant was diagnosed with Multiple Sclerosis (MS) in 2001. *Id.* ¶ 52. Defendant takes several medications to manage the nerve pain caused by his MS. *Id.* Defendant also has asthma, for which he uses an inhaler on a daily basis. *Id.*

In addition to suffering from his physical conditions, Defendant has struggled with his mental health since childhood. *Id.* ¶ 54. Defendant was diagnosed with depression and anxiety in 2019 and has since been prescribed several medications to treat these conditions. *Id.*

In January 2022, in an effort to treat Defendant's MS symptoms and to help him sleep, the New York State Office of Cannabis Management issued Defendant a medical marijuana card. *Id.* ¶ 57. Defendant now uses marijuana daily. *Id.*

### 5. Substance Abuse

Aside from his use of medically prescribed marijuana, Defendant has a history of substance use. *Id.* ¶ 57. Beginning in 2010 until his arrest for the instant offense, Defendant used cocaine and prescription medications, including Valium and Xanax, on a monthly basis. *Id.* Defendant did not report any alcohol abuse. *Id.* ¶ 58.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. The Supreme Court of the United States has long recognized "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Indeed, the Court has recognized that while "[s]tate and Federal Governments have sought to suppress [child pornography] for many years..." they have only

6

'[found] it proliferating through the new medium of the Internet." *Id.* Defendant's offensive conduct here confirms the High Court's concerns.

Defendant possessed the equivalent of 16,463 images of child obscenity. Probation's Recommendation at 4. Defendant is not charged with personally soliciting or abusing a child. Nevertheless, his offense is far from victimless. Indeed, the numerous victim impact statements submitted in this case and reviewed by the Court evidence the devastating and enduring harm inflicted upon the victims of child obscenity—the victims of this Defendant. Defendant actively and repeatedly harmed and debased his victims through his repeated consumption of child obscenity. His offense is grievous and warrants significant punishment.

Beyond the seriousness of the instant offense, the Court also finds there is a substantial need for deterrence, both specific and general, as Defendant's and others' possession of videos and images of child sexual abuse necessarily fuels and fosters the market for these obscene materials. *See, e.g., United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." (citation omitted)); *United States v. Johnson*, 221 F.3d 83, 98 (2d Cir. 2000) ("[D]issemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession." (citations omitted)); *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence of 120 months of imprisonment for receipt, distribution, and possession of child pornography where district court had observed that

7

Case 1:19-cr-00294-WFK   Document 70   Filed 05/19/23   Page 8 of 18 PageID #: 1451

"contrary to [the defendant's] contention, his crimes are not 'victimless' because they 'creat[e] a market' for child pornography and thus harm children, 'scarr[ing] [them] for life'").

As such, the Court's sentence seeks to deter Defendant and others from engaging in similar criminal activity, from disregarding U.S. law, and from partaking in illicit activity. More so, this Court also seeks to justly punish this Defendant for the grave offense he has committed by exploiting and harming the most defenseless members of our society.

C.  **The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Indictment charging him with Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). PSR ¶ 1.

Defendant faces a statutory minimum term of imprisonment of five (5) years, which is to say 60 months, and a maximum term of imprisonment of twenty (20) years, pursuant to 18 U.S.C. § 2252(b)(1). Defendant also faces a term of supervised release of five (5) years to life. 18 U.S.C. § 3583(k).

Defendant is ineligible for probation because he must be sentenced to a term of imprisonment pursuant to 18 U.S.C. § 2252(b)(1). 18 U.S.C. § 3561(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties, as well. Defendant faces a maximum fine of $250,000.00 pursuant to 18 U.S.C. § 3571(b), and a mandatory special assessment of $100.00 per Count pursuant to 18 U.S.C. § 3013, which the Court is required to impose in all cases. Defendant is also subject to the provisions of the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014, which instructs the Court to assess an amount of $5,000.00, per count, on any non-indigent person or

entity convicted of an offense under 18 U.S.C. Chapters 77, 109A, 110, 117; or Section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324), in addition to the assessment imposed under section 3013. *See* 18 U.S.C. § 3014. Defendant is also subject to the provisions of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, which instructs the Court to assess a fine of (1) not more than $17,000.00 on any person convicted of an offense under 18 U.S.C. § 2252(a)(4) or § 2252A(a)(5); (2) not more than $35,000.00 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000.00 on any person convicted of a child pornography production offense, in addition to any other criminal penalty, restitution, or special assessment authorized by law, and in consideration of the factors in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3572. *See* 18 U.S.C. § 2259A.

Defendant also faces mandatory restitution in this case pursuant to 18 U.S.C. § 3663A. Defendant must also comply with the requirements of the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq.* Moreover, Defendant is subject to criminal forfeiture pursuant to 18 U.S.C. §§ 2253(a) and 2253(b), and 21 U.S.C. § 853(p).

**D.     The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 2252 offenses is U.S.S.G. § 2G2.2. PSR ¶ 21. The base-level offense for Count One is 22 pursuant to Section 2G2.2(a)(2). *Id.*

There are several specific offense characteristics which warrant upward adjustments in this case, *id.* ¶¶ 22-33:

9

Two levels are added per U.S.S.G. § 2G2.2(b)(2) since the material involved prepubescent minors or minors who had not attained the age of 12. *Id.* ¶ 22.

Two additional levels are added per U.S.S.G. § 2G2.2(b)(3)(F) since the Defendant knowingly engaged in the distribution of child pornography other than that described in subdivisions (A) through (E) of U.S.S.G. § 2G2.2(b)(3). *Id.* ¶ 23.

Four levels are added per U.S.S.G. § 2G2.2(b)(4)(B) since the offense involved sexual abuse or exploitation of an infant or toddler. *Id.* ¶ 24.

Two levels are added per U.S.S.G. § 2G2.2(b)(6) since the instant offense involved the use of a computer for the possession and distribution of child pornography. *Id.* ¶ 25

Lastly, five levels are added per to U.S.S.G. § 2G2(b)(7)(D) since the offense involved over 600 images of child pornography. *Id.* ¶ 26.

These upward enhancements result in an adjusted offense level of 37. *Id.* ¶ 30. However, this figure is reduced by two-levels per U.S.S.G. § 3E1.1(a) due to Defendant's acceptance of responsibility, *id.* ¶ 32, and it is further reduced by an additional one-level per U.S.S.G. § 3E1.1(b) due to the fact Defendant timely notified the Government of his intent to enter a plea of guilty. *Id.* ¶ 33. Taking all adjustments into account, Defendant's total adjusted offense level is 34. *Id.* ¶ 34.

As previously stated, Defendant has no prior criminal convictions. *Id.* ¶¶ 35-41. This results in a total criminal history score of zero. *Id.* ¶ 37. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a Criminal History Category of I. *Id.* ¶ 38. A total adjusted offense level of 34, combined with a Criminal History Category of I, results in a recommended Guidelines range of imprisonment of 151 to 188 months. *Id.* ¶ 71.

All parties agree with this calculation. That is to say, all parties determined the nature of the Defendant's offense and criminal history result in a total adjusted offense level of 34, a criminal history category of I, and a Guidelines range of imprisonment of 151 to 188 months. *See* Def.'s Memo., ECF No. 63-1 at 2; Gov't Memo., ECF No. 61 at 3. As the defense notes, the parties stipulated in the plea agreement that Defendant's total net offense level is 31. Def's Memo. at 2. The discrepancy between the figures in the PSR and the plea agreement results from Probation including a five-point enhancement due to the number of images Defendant possessed as opposed to a two-point enhancement reflected in the parties' plea agreement. Gov't Memo. at 3.

Regardless, the parties all agree the Court should impose a sentence below the recommended Guidelines range in this case.

Defense counsel recommends the Court impose a sentence of 60 months, which is to say five years, the statutory minimum pursuant to 18 U.S.C. § 2252(b). *See* Def.'s Memo. at 12; Probation's Recommendation, ECF No. 57-1 at 1.

Defense counsel raises several arguments in support of a below-Guidelines sentence of five years. First, defense counsel cites Defendant's personal history, characterizing Defendant's life as incredibly difficult and lonely. Def.'s Memo at 2. The defense notes Defendant became socially isolated at an early age and describes how Defendant was bullied by his peers and had difficulty establishing healthy relationships in his youth. *Id.* Defense counsel also describes Defendant as a slow learner who has faced pervasive self-esteem issues and depression since high school. *Id.* at 4. It is because of the slew of emotional troubles Defendant faced as a young adult that he turned to alcohol and cannabis as a teenager in an attempt, as the defense describes, to numb his emotional pain. *Id.*

In addition to facing mental health challenges, the defense also reports Defendant has struggled for many years with MS, a debilitating health condition. *Id.* Although Defendant is now prescribed medications to help manage his symptoms, this disease continues to cause Defendant great physical discomfort. *Id.* The defense also notes how Defendant's physical condition has further exacerbated his mental health struggles. *Id.* at 4-5.

Defense counsel explains Defendant developed an unhealthy relationship with pornography, to which he had been exposed at a young age, beginning in 2010. *Id.* at 5. Defendant, who did not have any other social outlets, started watching online pornography every day over the course of several years. *Id.* It was during this time Defendant began using Kik, a mobile app which allows users to exchange messages. *Id.* Defendant first joined chat rooms wherein users would share adult pornography; he later became involved with groups that would distribute child pornography. *Id.* While admitting Defendant's error in this respect, defense counsel emphasizes Defendant was primarily drawn to this Kik group because he found in them a community—a place where he could escape from his feelings of loneliness and depression. *Id.*

Defense counsel also describes how it was after a relationship in Defendant's personal life crumbled when Defendant's drug, and Kik, use escalated. *Id.* Defendant became a recluse, and Defendant, often fueled by drugs, descended deeper into the Kik platform, exploring child pornography with younger children. *Id.* Defendant reports he was not aroused by the material, but instead had become desensitized to such shocking content. *Id.* Defense counsel explains Defendant initially shared pornographic material with other users in the chat rooms solely to evade removal by platform administrators. *Id.* at 5-6.

Defense counsel argues Defendant never intended to engage in a sexual act with a minor. *Id.* at 6. Defense counsel also highlights Defendant's efforts since his arrest to rehabilitate

himself. *Id.* For example, Defendant willingly participates in treatment and therapy through Mustard Seed Forensic Social Work Services, which reports Defendant has made notable progress. *Id.* Defense counsel also notes how Defendant is taking steps to better understand his behavior and to prevent relapses. *Id.* at 6-7.

In addition to Defendant's rehabilitative efforts, defense counsel highlights other mitigating factors they claim warrant consideration by the Court. First, while Defendant is not in custody of the Federal Bureau of Prisons ("BOP"), he has been under home confinement for approximately 47 months. *Id.* at 8. Second, defense counsel distinguishes the instant case from cases involving aggregating factors and compares it to similar cases in which the statutory minimum was imposed. *Id.* at 8-11. Third, defense counsel argues a sentence at the high end of the advisory Guidelines range as calculated by Probation would frustrate the intended purposes of the Guidelines enhancements. *Id.* at 11-12 (citing *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010)).

Finally, defense counsel informs the Court Defendant takes a daily, injectable medication called Copaxone, which has proved highly effective in managing Defendant's MS. Def's Supp. Memo., ECF No. 66 at 2-3. Defense counsel reports the BOP does not guarantee the availability of this medication, as it is not on the list of approved medications. *Id.* at 2. If a substantially similar substitute to this medication is unavailable, Defendant's treating physician can make a request for non-formulary medication to the BOP's Central Office. *Id.* However, as neither Copaxone nor its generic equivalents are on the approved list, defense counsel reports Defendant's "only option for continuing his physician-prescribed course of treatment is for his request to use non-formulary [sic] medication to be granted"—a decision over which the BOP

13

has "sole and absolute authority." *Id.* Defense counsel believes this is another reason the Court should impose a more lenient sentence.

The U.S. Probation Office Probation also recommends the Court impose a sentence of 60 months imprisonment, which they recommend should be followed by a term of five (5) years of supervised release with special conditions, as well as payment of restitution owed to the victims in the amount of $59,000.00. Fourth Addendum to the Presentence Investigation Report, ECF No. 65.

In reaching this recommendation, Probation also references Defendant's long struggles with his physical and mental health. *Id.* at 4. As with defense counsel, Probation notes Guideline 2G2.2 may fail to appropriately distinguish between defendants convicted of child pornography offenses. *Id.* (referencing the Second Circuit's ruling in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) in which the court found Guideline 2G2.2, the applicable provision here, to be "fundamentally different" from other guidelines).

That said, Probation emphasizes Defendant possessed a "vast collection" of child pornography, the equivalent of 16,463 images, in which young children are subjected to horrific sexual abuse. *Id.* While Probation argues the Court should consider Defendant's difficult personal circumstances, it urges the Court not to minimize the seriousness of Defendant's conduct as well as the expansive, societal harm his acts perpetuate. *Id.*

The Government, on the other hand, recommends the Court impose a sentence of at least 60 months in custody but less than the Guidelines range of 108 to 135 months. *See* Gov't Memo. at 1. The Government first notes the serious nature of the instant offense and the need for deterrence warrant a significant term of imprisonment. *Id.* at 4. As the Court has acknowledged, so too does the Government emphasize the perpetuation of abuse caused by the consumption of

14

child pornography. *See Gouse*, 468 F. App'x at 78 ("[The defendant's] crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life.") (internal quotation marks omitted)). Indeed, child obscenity crimes contribute to the continuing victimization of the children depicted in these images. *See United States v. Miller*, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)); *Williams*, 553 U.S. at 307 ("Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet.").

However, the Government also takes note of Defendant's serious physical and mental health conditions, as well as his deliberate efforts toward rehabilitation. *Id.* at 5. Namely, the Government describes Defendant's enrollment in and compliance with a treatment program designed to address issues related to this offense and to prevent any relapse behavior as "significant mitigation" for his offense. *Id.*

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Although not addressed by either party, the Court considers the Sentencing Commission's statement contained in U.S.S.G. § 5D1.2. There, the Commission recommends courts impose the statutory maximum term of supervised release if the conviction is a sex offense. U.S.S.G. § 5D1.2(b)(2). *See* U.S.S.G. § 5D1.2 cmt. 1 (defining a "sex offense" to include offenses perpetrated under Chapter 110 of Title 18 of the United States Code). The

Court does not give controlling weight to this statement, but it does consider it, as it is required to do as matter of law.

### F.   The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.   The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As set forth in the Plea Agreement, restitution is mandatory pursuant to 18 U.S.C. § 2259 in the full amount of the victims' losses attributable to Defendant's activities. Plea Agreement ¶¶ 12-16. The Government has requested restitution in the amount of **$59,000.00** payable to nine identified victims, whose images were among those in Defendant's collection of child pornography.[1]

## IV.   CONCLUSION

Finally, the Court has this to say to Defendant. Our children have the right to live and this Defendant has no right to evil. "Live" is spelled "L-I-V-E." "Evil", its converse, is spelled "E-V-I-L." This is no coincidence.

Our Constitution guarantees a right to life, to liberty, and to pursue happiness. Our Constitution guarantees no right to end life, to end liberty, and to preclude happiness. Especially

---

[1] The victims' real names have not been provided to preserve their confidentiality.

to our children.

In poker they call it the tell: the involuntary revelation of the cards a player holds; a flair of the nostrils or the widening or narrowing of the eyes which tells the careful observer what the player seeks to keep hidden until he springs the trap and reveals his true hand.

In this case the tells were numerous: according to a violation memorandum dated August 8, 2019, Defendant violated a condition of his release by possessing an Amazon Firestick and a Linksys Wi-Fi router which were seized from his apartment during a home visit by his supervising Pretrial Services Officer on August 5, 2019. Additionally, on August 6, 2019 Defendant reported to Pretrial Services and admitted to having and subsequently surrendering, a Samsung Galaxy S10 Android smartphone, internet-capable Zune MP3 player, and an Amazon Echo Show.

On August 2, 2019, a review of the cyber monitoring data revealed that on July 22, 2019, Defendant received an email to feabrera9634@gmail.com indicating his Netflix password had been changed and the account was accessed from a new device. Further investigation revealed the Netflix account was accessed from an Android device and from a streaming stick.

During the August 5, 2019 interview, Defendant initially denied having any unauthorized devices and told Pretrial Services Officers he believed his brother used an amazon firestick on a prior visit. However, when asked how a Wi-Fi device was used in a household without Wi-Fi, Defendant opened a drawer to reveal the Amazon Firestick and a Linksys Wi-Fi router. Defendant again denied using any of those devices. When questioned about whether he had any other devices, specifically an Android smartphone, Defendant denied possessing any other internet capable devices. However, an inspection of his Consumer Cellular flip phone proved that was a lie: text messages revealed pornographic links, one of which was a live camera chat.

Only then did Defendant admit having accessed pornographic websites on the Samsung Galaxy S10 smartphone.

In accordance with the analysis above, the Court finds a sentence of ninety (90) months of incarceration, five (5) years of supervised release with special conditions imposed, restitution in the amount of $59,000.00 to victims identified by the Government, forfeiture as set forth in the Plea Agreement (ECF No. 50), and payment of a $100.00 special assessment is appropriate and comports with the dictates of § 3553. The Court finds, moreover, this sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 57 as well as the Addendums to the Presentence Investigation Report, ECF Nos. 59, 60, 65, 68, to the extent they are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

Defendant has a right to appeal to the Court's sentence within 14 days of the entry of this Order.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 19, 2023
      Brooklyn, New York